UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STACEY BADON on behalf of herself and all those similarly situated,<br><br>  Plaintiff,<br><br>vs.<br><br>BERRY'S RELIABLE RESOURCES, LLC AND RHONDA WILLIAMS,<br><br>  Defendants. | CIVIL ACTION NO.: 19-12317<br><br>SECTION: D<br>JUDGE WENDY B. VITTER<br><br>MAGISTRATE: 3<br>DANA M. DOUGLAS |

### MEMORANDUM IN SUPPORT OF MOTION TO CONDITIONALLY CERTIFY FLSA COLLECTIVE ACTION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(b)

Plaintiff, Stacey Badon, on behalf of herself and all other similarly situated individuals, respectfully submits this Memorandum in Support of Motion to Conditionally Certify FLSA Collective Action and Facilitate Notice Under 29 U.S.C. § 216(b).

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff has filed a Collective Action Complaint (Rec. Doc. 1), asserting collective action claims on behalf of herself and a proposed collective class seeking unpaid overtime wages that Defendants, Berry's Reliable Resources, LLC and Rhonda Williams ("Defendants") – who have been sued as Plaintiff and the FLSA Collective Action Plaintiffs' joint employers – declined to pay to them in direct violation of the FLSA.[1]

---

[1] In addition, Plaintiff Badon has filed an individual claim under the Louisiana Final Wage Payment Act, La. R.S. 23:631, *et seq*.

Under the FLSA and the case law interpreting it, individuals may bring "collective actions" on behalf of themselves and all others "similarly situated."[2] Here, as a result of Defendants' unlawful policies and practices, Plaintiff has filed this Motion pursuant to the FLSA's collective action provision in order to provide workers similarly situated to Plaintiff with a reasonable opportunity to collectively litigate their claims.[3] Plaintiff now specifically requests that the Court enter an order conditionally certifying the following class of similarly situated individuals, referred to in their Complaint as the "FLSA Collective Class":

> All persons employed by Defendants as home health care workers since February 2017 who were paid on an hourly basis but were not paid at an overtime rate of one and one-half times their hourly rate of pay for each hour worked in excess of 40 per week in violation of the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, due to Defendants' deliberate and willful refusal to pay overtime that was owed under the FLSA.

Members of the FLSA Collective Class are similarly situated for purposes of notice and conditional certification because*:* (1) they were all employed by Defendants to perform home health care services; (2) they were all paid by the hour (although their rates of pay may have differed, that is immaterial to the issue of whether they were paid overtime under the FLSA and does not preclude certification); (3) they all are or were subject to similar terms and conditions of employment, namely they were scheduled to work for Defendants based on Defendants' clients' schedules, they had no ability to make their own schedules, they had no ability to contract with their own clients, and they were dependent upon Defendants for work; and (4) they were all not paid overtime wages for any or all hours worked in excess of 40 per week in direct violation of the overtime provisions of the FLSA.

---

[2] 29 U.S.C. § 216(b).
[3] *Id.*

2

Defendants have employed many persons as home health care workers that they paid by the hour that they required to work in excess of 40 hours per week, but refused to pay one-and-one-half times their regular rate of pay for all hours worked in excess of 40, despite knowing that these overtime wages were due and owing.  Instead, Defendants paid these workers an hourly rate of pay, without regard to the fact that they worked in excess of 40 hours per week and without regard for the fact that they were not exempt from the overtime provisions of the FLSA under the law and that Defendants knew they were not exempt.  The precise number of persons who fall within the provisions of the proposed FLSA Collective Class will be readily ascertainable from Defendants' records and it is likely that these persons will desire to recover damages for the unpaid overtime wages owed to them, upon notification of this action.

Expedient conditional certification of the FLSA Collective Class and notice to its potential members is necessary because the limitations period on FLSA Collective Class' claims does not cease to run until an individual opts in to this case.  Thus, each of Defendants' employees who are or were subject to Defendant's deliberate and illegal compensation schemes are losing money (in the form of damages) with each day that passes without receiving notice of this lawsuit.

Defendants should be in possession of the last known address and/or email addresses of these potential members of the FLSA Collective Class.  Because there are many other similarly situated current or former workers who may not be aware of this lawsuit or of their right to proceed in this forum, Plaintiff respectfully requests permission to send notice to putative members of the Collective Class at their last known

address to make those individuals aware of their rights and to allow them to make an informed decision on whether to opt in to this collective action.

## II. FACTUAL BACKGROUND

Defendants are in the business of providing home health care services in the Greater New Orleans area.[4] As part of their operations, Defendants hire persons to serve as home health care workers, which is an essential function of their operations.[5] Though Defendants may pay each of these persons a different hourly rate, all of these persons are paid hourly.[6] Each home health care worker is dependent upon Defendants' contracts with clients and the governmental agency or insurance company who pays for their care for work; home health care workers do not contract independently for clients.[7] Defendants regularly require home health care workers to work in excess of 40 hours per week.[8] However, Defendants have engaged in a widespread pattern and practice of not paying these workers overtime pay when they work in excess of 40 hours per week, regardless of the fact that these persons are not exempt from the overtime provisions of the FLSA.[9]

In April 2016, Plaintiff began working for Defendants as a home health care worker.[10] For the entire time that Plaintiff worked for Defendants, she received her schedule from Defendants and had no independent ability to determine with whom she would work.[11] Defendants controlled how, where and when she performed her job duties

---

[4] Ex. A, Declaration of Stacey Badon at ¶2.
[5] *Id*. at ¶3.
[6] *Id.* at ¶6.
[7] *Id.* at ¶12.
[8] *Id*. at ¶7.
[9] *Id*. at ¶8; *see also, Home Care Ass'n of America v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015)(home health care workers held to be employees, not independent contractors).
[10] Ex. A, Declaration of Stacey Badon at ¶4.
[11] *Id*. at ¶11.

4

for Defendants.[12] Plaintiff routinely worked for Defendants for more than 40 hours per week.[13] However, due to Defendants' payment scheme whereby it did not pay overtime to any of its hourly employees due, Plaintiff was not paid one and one-half times her hourly rate for each hour in excess of 40 per week that she worked for Defendants.[14]

In June 2019, Anthony Badon began working for Defendants as a home health care worker.[15] For the entire time that he worked for Defendants, he received his schedule from Defendants and had no independent ability to determine with whom he would work.[16] Defendants controlled how, where and when he performed his job duties for Defendants.[17] Mr. Badon routinely worked for Defendants for more than 40 hours per week.[18] However, due to Defendants' payment scheme whereby it did not pay overtime to any of its hourly employees, Mr. Badon was not paid one and one-half times his hourly rate for each hour in excess of 40 per week that he worked for Defendants.[19]

Plaintiff's and Anthony Badon's experiences were not unique. They are personally aware that Defendants paid other employees at an hourly rate, required them to work in excess of 40 hours per week and did not pay them overtime for any hours worked in excess of 40 per week.[20] Moreover, Defendants' own documents reveal that Defendants failed to pay overtime to hourly employees. Though discovery is in the early stages, even a cursory review of the paystubs in Plaintiff Badon's possession reveal that she often worked in excess of 80 hours in a two-week period (which necessarily means

---

[12] *Id.* at ¶13.
[13] *Id.* at ¶7.
[14] *Id.* at ¶¶8, 9.
[15] Ex. B, Declaration of Anthony Badon at ¶4.
[16] *Id.* at ¶¶11-13.
[17] *Id.*
[18] *Id.* at ¶7.
[19] *Id.* at ¶8.
[20] Ex. A, Declaration of Stacey Badon at ¶9; Ex. B, Declaration of Anthony Badon at ¶9.

5

that she worked in excess of 40 hours per week for at least one week in the two-week period), she was only ever paid at her flat rate of pay for the hours that she worked, in direct violation of the FLSA.[21]  Indeed, the law is blatantly clear that home health care workers are **_not_**  exempt from the overtime provisions of the FLSA.[22]

The precise hours that Plaintiff and the FLSA Collective Action Plaintiffs worked for Defendants should be readily identifiable from Defendants' records.[23] However, Plaintiff and Mr. Badon's schedules were similar to those worked by other home health care workers[24] and it is plain that most, if not all, of these employees were also denied overtime pay.[25]

The FLSA requires Defendants to pay employees who work over 40 hours in one workweek overtime compensation "not less than one and one-half times the regular rate at which they are employed."[26] Defendants' actions of paying hourly home helath care employees at their straight time hourly rate of pay, regardless of the hours that they worked in excess of 40 per week, thereby failing to pay them overtime pay rate violates the FLSA.[27]  Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and the FLSA Collective Plaintiffs suffered lost overtime compensation, plus liquidated damages. Plaintiff and the FLSA Collective Plaintiffs are additionally entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

---

[21] Ex. C, Stacey Badon Paystubs.
[22] *Home Care Ass'n of America v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015).
[23] Ex. A, Declaration of Stacey at ¶14.
[24] Ex. A, Declaration of Stacey Badon at ¶¶8, 9, 11; Ex. B, Declaration of Anthony Badon at ¶¶8, 9, 11.
[25] *Id*.
[26] 29 U.S.C. 207.
[27] *Id*.

### III.  LAW AND ARGUMENT

The FLSA's "collective action" provision allows one or more employees to bring a collective action on "behalf of himself or themselves and other employees similarly situated."[28] The FLSA does not explicitly define the term "similarly situated;" however, district courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify potential "similarly situated" plaintiffs that they may choose to "opt in" to the suit.[29] Under Section 216(b), to successfully assert a collective action on behalf of a collective class, an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated."[30] To be "similarly situated," the plaintiff's claims and positions must be similar to those of the potential opt in plaintiffs, but they need not be identical.[31]

Court-facilitated notice to a class in a collective action under the FLSA is warranted when a plaintiff demonstrates that there are others who may wish to opt in to the collective action and who are "similarly situated" with respect to job requirements and pay provisions.[32] The standard for collective action notice is a "lenient" one,[33] and the plaintiff need only demonstrate a reasonable basis for his or her allegation that a class

---

[28] 29 U.S.C. § 216(b).
[29] *See, e.g., Hoffman-La Roche,* 493 U.S. at 169.
[30] *See, e.g., Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-16 (5th Cir. 1995), *overruled on other grounds*, 539 U.S. 90, 123 (2003).
[31] *See, e.g., Kuperman v. ICF International, et al.,* No. 08-565, 2008 WL 4809167, at *5 (E.D. La. Nov. 3, 2008) ("In the end, § 216(b) of the FLSA does not require that plaintiffs be identical..."); *Camp v. The Progressive Corporation, et al.,* No. 01-2680, 2002 WL 31496661, *4 (E.D. La. Nov. 8, 2002) (same); *Allen, et al. v. McWane, Inc.,* No. 06-CV-158, 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006) (same).
[32] *See, e.g., Hipp v. Liberty Nat'l Life Ins. Co.,* 164 F.R.D. 574, 575-76 (M.D. Fla. 1996); *Belcher v. Shoney's, Inc.,* 927 F.Supp. 249, 251 (M.D. Tenn 1996); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Garner v. S.D. Searle Pharm.*, 802 F.Supp. 418, 419 (M.D. Ala. 1991).
[33] *Mooney*, 54 F.3d at 1214; *Johnson et al. v. TGF Precision Haircutters, Inc.*, 319 F.Supp.2d 753, 754 (S.D. Tex. 2004) (commenting that the standard applied is a lenient one, usually resulting in "conditional certification" of a representative class, to whom notice is sent and who receive an opportunity to "opt-in").

of similarly situated persons may exist.[34] Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute.[35]

### A. Collective Action Certification Is A Two-Stage Process

Within the Fifth Circuit, courts, including those within the Eastern District of Louisiana, have applied the two-stage approach to collective action certification that is delineated in the case of *Lusardi v. Xerox Corp.*[36] The first stage of the *Lusardi* analysis – the one at issue in this Motion – is commonly known as the "notice stage" or "conditional certification stage." *Mooney*, 54 F.3d at 1213-14. The second stage is routinely referred to as the "merits" stage.

The standard for conditional certification at the notice stage is lenient **"and typically results in 'conditional certification' of a representative class."**[37] Under such a standard, "The plaintiffs' burden is not heavy, the evidence needed to justify certification

---

[34] *See, e.g., Lima v. International Century Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D. La. 2007).
[35] *Id.*, at 170-172.
[36] *Lusardi v. Xerox Corp* 118 F.R.D. 351 (D.N.J.1987), *mandamus granted in part, appeal dismissed,* 855 F.2d 1062 (3rd Cir.1988), *vacated in part, modified in part, and remanded,* 122 F.R.D. 463 (D.N.J.1988), *aff'd in part, appeal dismissed,* 975 F.2d 964 (3rd Cir.1992); *See, e.g., Lang v. DirecTV, Inc.*, *et al.*, No. 10-1085G1, 2011 WL 6934607, at *7 (E.D. La. Dec. 30, 2011) (the *Lusardi* approach is the "more common" approach and is routinely employed by Eastern District of Louisiana); *Fernandes da Silva v. M2/Royal Construction of Louisiana, LLC*, No. 08-4021, 2009 WL 3565949, at *3 (E.D. La. Oct. 29, 2009) (finding that the two-stage approach in *Lusardi* is the predominant test for collective action certification in the Fifth Circuit); *Melson v. Directech Southwest, Inc.*, No. 07-1087, 2008 WL 2598988, at *4 (E.D. La. June 25, 2008) (applying the "preferred" *Lusardi* approach); *Ebbs v. Orleans Parish School Board,* No. 04-1198, 2007 WL 2127699, at *2 (E.D. La. July 24, 2007) (noting that the Fifth Circuit "historically" employs the *Lusardi* approach); *Kenyata-Bean, et al. v. Housing Authority of New Orleans*, *et al.*, No. 04-2592, 2005 WL 3543793, at *6 (E.D. La. Nov. 18, 2005) (*Lusardi's* two-stage approach has been "unanimously adopted" by district courts within the Fifth Circuit); *England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 509 (M.D. La. 2005) ("The Eastern District utilized the *Lusardi* approach because it found that the *Lusardi* approach has been 'embraced' more often in the Fifth Circuit than the 'Spurious Class Action' found in *Shushan*"[36]).
[37] *Mooney*, 54 F.3d at 1213-14; *see also, e.g., Camp*, 2002 WL 31496661, *4 (emphasis in original).

8

is minimal, and the existence of some variations between potential claimants is *not* determinative of lack of similarity."[38] Plaintiffs may meet this burden by making allegations that the potential opt in plaintiffs were subject to a single decision, policy, or plan.[39] The court at this stage determines whether the plaintiff and potential opt in plaintiffs are "similarly situated" based upon the allegations in a complaint and any declarations that have been submitted.[40]

Under the *Lusardi* two-stage approach, once the court makes the preliminary determination that the similarly situated standard is met and conditionally certifies the collective class, the case proceeds as a collective action throughout discovery.[41] Discovery is relevant thereafter both as to the merits of the case and for the second step in the collective action certification procedure, wherein the court evaluates conflicting evidence developed in discovery to test the validity of its preliminary decision at the notice stage.[42] The court's "similarly situated" analysis at the merits stage is typically

---

[38] *Id.*
[39] *Mooney*, 54 F.3d at 1213-14; *see also, e.g., Lang*, 2011 WL 6934607, at *7 (the similarly situated standard was met where the plaintiffs and class members performed similar job functions under the same employment scheme); *Lackey,* 2011 WL 6329909, at *3 (the similarly situated standard was met where the defendant's policies were company-wide); *Fernandes da Silva*, 2009 WL 3565949, at *5 (the similarly situated standard was met where was met where the plaintiffs presented allegations that the defendant had a systematic policy of denying overtime wages to plaintiffs and members of the class); *Ebbs*, 2007 WL 2127699, at *2 (the similarly situated standard was met where the plaintiffs and class members were victims of the defendant's common, potentially unlawful pay policy); *Kenyata-Bean,* 2005 WL 3543793, at *7 (the similarly situated standard was met where the defendant had a common policy of denying overtime to the plaintiffs and class members); *Donohue v. Francis Services, Inc.,* No. 04-170, 2004 WL 1161366, at *2 (E.D. La. May 24, 2004) (the similarly situated standard was met where employees were subject to the same company-wide policies); *Crain v. Helmerich and Paine International Drilling Company,* No. 92-0043, 1992 WL 91946, at *2 (E.D. La. April 16, 1992) (the similarly situated standard was met where employees were subject to the same company-wide policy that deprived them of payment for time spent in job-related meetings and training).
[40] *Mooney*, 54. F.3d at 1213-14; *see also, e.g., Lang*, 2011 WL 6934607, at *7; *Lackey, et al. v. SDT Waste & Debris Services*, No. 11-1087, 2011 WL 6329909, at *3 (E.D. La. Dec. 19, 2011; *Smith v. Offshore Specialty Fabricators, Inc.*, No. 09-2985, 2009 WL 2046159, at *3 (E.D. La. July 13, 2009); *Ebbs*, 2007 WL 2127699, at *2; *Kenyata-Bean,* 2005 WL 3543793, at *7.
[41] *Mooney*, 54 F.3d at 1214.
[42] *Id.*

precipitated by a defendant's motion for decertification after discovery is complete.[43] The "similarly situated" determination is more stringent at the merits stage, because once the notice and opt in period is complete, the court has the benefit of knowing the composition of the collective action.[44] Thus, allowing early notice and full participation by the opt in plaintiffs via the conditional certification process "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive."[45]

### B. Plaintiff Satisfies The "Similarly Situated" Standard For Conditional Certification

To satisfy the lenient "similarly situated" standard at the notice stage, Plaintiff need only introduce allegations in his pleadings, evidence and the declarations submitted herewith that he and the members of the FLSA Collective Class were subject to a single decision, policy, or plan. Plaintiff readily meets this threshold. The declarations submitted herewith shows that Defendants maintained common misclassification, scheduling and compensation policies and/or practices applicable to Plaintiff and members of the FLSA Collective Class, which violate the FLSA. Defendants' common policies and/or practices include:

- Requiring Plaintiff and the FLSA Collective Action Plaintiffs to work in excess of 40 hours per week;
- Paying Plaintiff and the FLSA Collective Action Plaintiffs their hourly rate of pay, regardless of whether they worked in excess of 40 hours per week;
- Failing to pay Plaintiff and the FLSA Collective Action Plaintiffs overtime for hours worked in excess of 40 per week;

---

[43] *Mooney*, 54 F.3d at 1214 ("The second determination is typically precipitated by a motion for 'decertification' by the defendant after discovery is largely complete and the matter is ready for trial"); *see also, e.g., Kenyata-Bean*, 2005 WL 3543793, at *6; *Lackey*, 2011 WL 6329909, at *3; *Smith*, 2009 WL 2046159, at *3; *Williams, et al. v. Bally's Louisiana, Inc.*, No. 05-5020, 2006 WL 1235904, at *2 (E.D. La. May 5, 2006); *Clarke v. Convergys Customer Mgmt Group, Inc.*, 370 F.Supp.2d 601, 604-05 (S.D. Tex. 2005).
[44] *Mooney*, 54 F.3d at 1214 ("At this stage, the court has much more information on which to base its decision and makes a factual determination on the similarly situated question").
[45] *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 406-407 (D.N.J. 1988) *aff'd,* 493 U.S. 165 (1989).

- Failing to keep accurate records of the hours Plaintiff and the FLSA Collective Action Plaintiffs worked; and
- Misleading Plaintiff and the FLSA Collective Action Plaintiffs about the law regarding overtime pay.

Specifically, the declarations submitted herewith contains ample evidence that Plaintiff is "similarly situated" to the FLSA Collective Action Plaintiffs and that Defendants have violated the FLSA. The declarations of Plaintiff and Mr. Badon show that they worked for Defendants for more than 40 hours per week.[46] In addition, the declarations and evidence shows that Plaintiff and the FLSA Collective Action Plaintiffs were paid an hourly straight time rate of pay, regardless of whether they worked in excess of 40 hours per week.[47] Finally, the declarations also demonstrate that Plaintiff is aware of other hourly personnel who were scheduled to work in this same manner and paid in this same manner.[48] The testimony of the Plaintiff in her declaration is supported by Defendants' own documents, which clearly show that hourly personnel for Defendants were paid at their straight time rate of pay, regardless of the hours that they work for Defendants and that they worked in excess of 40 hours per week for Defendants.[49]

Because Defendants' unlawful policies and practices apply to Plaintiff and all potential members of the FLSA Collective Class, and because these policies and practices similarly affect Plaintiff and each potential member of the FLSA Collective Class, Plaintiff contends that conditional certification of the proposed FLSA Collective Class is appropriate pursuant to 29 U.S.C. § 216(b). Conditional certification of the proposed

---

[46] Ex. A, Declaration of Stacey Badon at ¶7; Ex. B, Declaration of Anthony Badon at ¶7.
[47] Ex. A, Declaration of Stacey Badon at ¶8.
[48] *Id*. at ¶9; Ex. B, Declaration of Anthony Badon at ¶9.
[49] Ex. C, Stacey Badon Paystubs.

FLSA Collective Class is particularly appropriate given the well-established lenient standard for granting conditional certification within the Fifth Circuit.[50]

In addition to these considerations, Plaintiff and members of the FLSA Collective Class are precisely the type of workers that the FLSA's collective action mechanism was designed to protect.[51] "A collective action allows . . . [p]laintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged... activity."[52] Accordingly, based on the applicable law, and the facts alleged in the Collective Action Complaint, as verified by the declarations of Plaintiff and Anthony Badon and Defendants' own documents, this Court should grant Plaintiff's request for conditional certification.

C. **Notice To Potential Members Of The FLSA Collective Class Is Appropriate And Necessary To Protect Their Rights.**

"The judicial system benefits by the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged...activity."[53] For these benefits to be realized, however, persons who have been aggrieved by the unlawful conduct must be provided accurate and timely notice of the collective action so that they can make informed decisions about whether to participate.[54] Accordingly, the Court has broad discretion to allow Plaintiff to notify putative members of the FLSA Collective that they may choose to opt in to a suit.[55]

---

[50] *See, e.g., Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds*, 539 U.S. 90, 123 (2003); *Lang v. DirecTV, Inc., et al.*, No. 10-1085G1, 2011 WL 6934607, at *7 (E.D. La. Dec. 30, 2011).
[51] *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).
[52] *Id.*
[53] *Hoffman-La Roche*, 493 U.S. at 170.
[54] *Id.*
[55] *Id.* at 170-171.

Early distribution of the notice is essential in FLSA collective actions, because, unlike in class actions under Fed. R. Civ. P. 23, the statute of limitations on FLSA claims continues to run until potential plaintiffs affirmatively opt in to the action.[56] Delaying notification will cause serious prejudice to potential members of the FLSA Collective Class because "every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover."[57] This consideration alone weighs heavily in favor of early notification.[58]

The evidence submitted shows that the potential members of the FLSA Collective Class were not paid overtime hours for the hours they worked in excess of 40 per week.[59] Therefore, these potential members of the FLSA Collective Class are losing out on their claims for unpaid overtime and liquidated damages every day that passes and they are not opted into this suit. Given this evidence, notice to members of the FLSA Collective Class should be expedited, as delay threatens to destroy their ability to seek compensation for numerous hours of work for which they were not paid.

To avoid delay, Plaintiff proposes a notice plan similar to others that have been approved by district courts within the Fifth Circuit.[60] Plaintiff requests that the Court approve the proposed notice form submitted herewith for distribution via U.S. Mail to the last known address of the members of the FLSA Collective Class; via text message to the

---

[56] *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916-917 (5th Cir. 2008); *Lima*, 493 F.Supp.2d at 798.
[57] *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007).
[58] *Id.* ("Prompt court action is needed because potential opt-in plaintiffs' claims are in risk of being extinguished by the running of the statute of limitations").
[59] Ex. A, Declaration of Lawrence Richardson at ¶¶8-10; Ex. B.
[60] *See, e.g., Williams v. Bally's* 20 *Louisiana, Inc.*, No. 05-5020, 2006 WL 1235904, at *3 (E.D. La. May 5, 2006) (180-day opt in period from order granting notice, with two weeks for the defendant to disclose names and addresses); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 482-483 (E.D. La. 2006) (180-day opt in period from order granting notice, with 26 days for the defendant to provide names and addresses); *Johnson v. American Airlines, Inc.*, 531 F.Supp. 957, 961 (N.D. Tex. 1982) (finding direct mail and posting on company bulletin boards was reasonable notice); *Koviach, et al v. Crescent City Consulting, et al*, No. 14-2874 (E.D.La)(Rec. Doc. 62).

13

last known telephone number for the members of the FLSA Collective Action Class and to be posted in Defendants' places of employment in an area readily visible to employees.[61] In addition, Plaintiff has submitted a proposed Opt-In Consent form for putative FLSA Collective Class members to use to join in this action.[62]

To facilitate notice to potential members of the FLSA Collective Class, Plaintiff requests that the Court require Defendants to produce, within 14 days, a computer-readable database that includes the names of all potential members of the FLSA Collective Class, along with their last known mailing address and telephone number. Based on this contact information, Plaintiff's counsel will mail and text the Court-approved notice and opt-in consent form to potential class members. Plaintiff further proposes that potential members of the FLSA Collective Class be required to return their signed consent forms to Plaintiff's counsel within 120 days (received or postmarked) after the date on which the notice and consent forms are mailed. Plaintiff's counsel will file the consent forms with the Court on an ongoing basis and no later than two weeks after the end of this 120-day notice period.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff Stacey Badon respectfully requests that the Court conditionally certify the FLSA Collective Class under the Section 216(b) of the FLSA and authorize notice to allow potential members of the FLSA Collective Class to opt in to preserve their rights.

---

[61] *See* Ex. D, Proposed Notice.
[62] Ex. E, Proposed Opt-In Consent Form.

Respectfully submitted,


/s/ *Mary Bubbett Jackson*
Jody Forester Jackson, (La. Bar No. 28938)
Mary Bubbett Jackson, (La. Bar No. 29110)
**JACKSON+JACKSON**
201 St. Charles Avenue, Suite 2500
New Orleans, Louisiana 70170
T: (504) 599-5953
F: (888) 988-6499
E: jjackson@jackson-law.net
   mjackson@jackson-law.net
Attorneys for Plaintiff and the FLSA Collective Plaintiffs