UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STACEY BADON on behalf of herself and all those similarly situated, | CIVIL ACTION NO.: 19-12317<br>c/w 20-0584 |
| Plaintiff, | SECTION: D<br>JUDGE WENDY B. VITTER |
| vs. | |
| BERRY'S RELIABLE RESOURCES, LLC AND RHONDA WILLIAMS, | MAGISTRATE: 3<br>DANA M. DOUGLAS |
| Defendants. | IN RE: 19-12317 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION
TO DECERTIFY THE CONDISIONALLY CERTIFIED CLASS**

## I.  INTRODUCTION

Stacey Badon and Anthony Badon ("Named Plaintiffs") bring this FLSA claim as a collective action pursuant to 29 U.S.C. §216(b) on behalf of all person in the United States, who since August 2016, previously worked or currently work for Defendants as home health caregivers, who worked in excess of 40 hours per week, but were not paid overtime pay for all hours worked in excess of 40 hours per week.  This court provided a deadline for all Opt- In Plaintiffs of January 1, 2021.

Plaintiffs estimated that there are dozens, if not hundreds of members of the FLSA collective classes who have been affected by Defendants improper policies and practices. Additionally, Plaintiffs claim that this proceeding is properly maintained as a collective action because Plaintiffs are similarly situated to the collective action members they seek to represent via the "class" wherein they all worked in excess of 40 hours per week and were not paid overtime by the Defendants.  Although Plaintiffs estimated dozens, if not hundreds of employees as part of their class who were similarly situated with Plaintiffs; however as of October 21, 2020, via court

document 55, the following individuals Opt-In; Altravese Gardner, Bernette Kinard, Chanell Wilson, Deborah Ann Carson, Dereinisha Johnson, Diane Jones, Gloria Williams, Helen Hudson, Kwane Harris, Rachel Williams, Shena Day, Sheneatha Baptist, Tineka Benn and Treonda Irvin.[1] On November 2, 2020, via court document 58, the following individual Opt-In; Francis Pessoa.[2] On November 10, 2020, via court document 59, the following individuals Opt-In; Francine Dixon, Mary Morgan and Rena Lyons.[3]  Please noted, that Candonias Banks Opt-In consent form was filed on January 15, 2021, thereby disbarring her claim.   It was filed via court document 62, therefore, Ms. Banks did not file in time.[4]

## II.    BACKGROUND

### A.  BERRY'S RELIABLE RESOURCES, LLC

Berry's Reliable Resources, LLC is home health service that provides health services to local consumers within the State of Louisiana.   Berry's contract with subcontractors known as DSW to provides services such as cleaning, providing medicine, bathing etc. based on the need of the consumers.   Consumers' needs are provided by the State Department based on the individual consumers.

### B.  INDEPENDENT CONTRACTOR AGREEMENT

Every independent contractor signs a subcontract agreement with Berry's.  many of the terms and conditions in the agreement are required by the Louisiana Code of Health Department. The requirements are found in the.  Contractors may accept or reject consumers.   Contractors are never forced to accept to work with the consumers, nor are they forced to work overtime. Contractors may select their consumers based on the State plan for that consumer.

---

[1] Plaintiff's notice of filing consent to join collective Action Doc. 55.
[2] *Id* Doc. 58.
[3] *Id* Doc. 59.
[4] Id Doc. 62.

Contractors may select on contracts to work with the consumer as long as they provide the need services within the State plan.   Contracts' hours of operation are based on the consumers' care plan designated by the State.  Therefore, contractor agrees to that scope of work provided for the individual consumer.   Berry's does not care how the work is accomplished, only that it is completed.

### C.  CONTRACTOR BUSINESS OPERATIONS

Berry's provides contractors as much freedom as possible to operate their business without violating code.  The contractor may provide person services to any consumer provided the needs of the consumers have been completed.   The agreement does not have a non-compete provision within the document.  Most contractors provide service to more than one consumer.  Stacey Badon provides service to Georgia Badon and Bailey.

### D.  HOURS WORKED BY CONTRACTORS

Contractors paid based on the agreement signed and the need of the consumers.   Thus, contractors' hours are different based on the needs of the consumers.   Consumers can be long term care or short-term care based on need.

### III.    ARGUMENT

Defendants' Motion to decertify the Conditional Certification should be granted because Plaintiffs are not similarly situated to the putative class of employees, which is required to support decertification of an FLSA collective action.

There are three main considerations when determining if Plaintiffs are similarly situated under the FLSA: (1) dispute factual and employment setting settings of the individuals plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff;

[and] (3) fairness and procedural consideration."[5]  Because in this case these three considerations necessitate an individualized analysis that is not possible in a collective action setting, conditional certification would be improper.

The discovery, on which the Plaintiffs rely in their Motion for Conditional Certification, demonstrates "that the putative class members' circumstances are significantly dissimilar with respect to the economic realities factors that will later need to be analyzed for FLSA coverage purposes to determine whether a worker was improperly classified by Berry's as an independent contractor.[6]

The Plaintiffs in this matter assert that Defendant violate the FLSA.   Plaintiffs argue that Berry's illegally misclassifies its DSW as independent contractors.  Misclassifying a worker in such a manner does not automatically violate the FLSA,[7] and indeed misclassification is a threshold question to be resolved before the Court can even address the FLSA claims.

The Plaintiffs have not shown that Berry's has a uniform policy of misclassifying the Plaintiffs as independent contractors.   The Named Plaintiffs' claims are based on personal experiences and beliefs of each, many directly contrary to the terms of the agreement, rather than a common policy of Berry's.   Plaintiffs assert that they have shown common proof across the alleged collective that would allow the economic realities test to be applied to the collective rather than each individual contractor.   Discovery on the question of control alone shows there are points of conflicting evidence establishing there is no commonality among the Plaintiffs, much less the Opt-In contractors, when it comes to analyzing the degree of control exercised by Berry's.

---

[5] *Gatewood v. Kock Foods of Mississippi, LLC,* 2009 WL 8642001, at *13 (S.D. Miss. 2009).
[6] *Christianson v. NewPark Drilling Fluids, LLC,* 2015 WL 1268259, at * 4 (S.D. Tex. 2015).
[7] 29 U.S.C. §216 (holding employers liable only for failing to pay a minimum wage).

Plaintiffs then assert that the pay practice among the collective are common.  The only thing common to the collective is that they get paid based on the needs of the consumer.   The evidence established to date clearly shows there is no commonality among these Plaintiffs because whether they each will make minimum wage for any given week is impacted by choices of each individual, not by an illegal uniform policy that violates the FLSA.

> A.  *This Court should apply a heightened evidentiary standard not the "fairly lenient" standard from Lusardi v. Xerox Corp.*

Courts in the Fifth Circuit typically utilize the *Lusardi*[8] method when dealing with FLSA collective actions, which "advises a two-step certification analysis: (1) the notice stage, and (2) the 'opt-in,' 'merits,' or decertification stage."[9]

The typical *Lusardi* analysis uses a fairly lenient standard, requiring only "substantial allegations that the putative class members were together victims of a single decision, policy, or plan" making them sufficiently similar to merit sending a notice to other possible class members.[10] However, the Fifth Circuit has explicitly left open the question of whether the *Lusardi* approach, the *Shushan*[11]approach, or some third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action.[12]

One of the rationales for the leniency provided under the *Lusardi* approach is that "at the early stages of litigation, plaintiffs have not had time to conduct discovery and marshal their best evidence.  This rational disappears, however, once the plaintiffs have had an opportunity to

---

[8] *Lusardi v. Xerox Corp.,*188 F.R.D. 351 (D.N.J. 1987).
[9] *See, e.g., Brooks v. Illusions, Inc.,* 2016 WL 6871244 (S.D. Miss. 2016) (*citing Mooney v. Aramco Servs. Co.,* 54F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003); *See also, Tolentino v. C & J Spec-Rent Servs., Inc.,* 716 F. Supp. 2d 642, 646-47 (S.D. Tex. 2010) (collecting cases).
[10] *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1214 (5th Cir. 1995) (emphasis added); *Acevado v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010).*
[11] *Shusan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo. 1990)* (Adopting a standard more similar to the Rule 23 class action analysis where the court is to look at factors such as numerosity, commonality, typicality, and adequacy of representation).
[12] *Acevado*, 600 F.3d at 519 (5th Cir. 2010).

conduct discovery." This is why plaintiffs typically move for conditional certification early in the litigation arguing that, at that stage, their evidentiary burden is light.[13] Simply, where the parties have had the opportunity to conduct discovery on the issue of certification, the similarly situated inquiry is more stringent."[14]

      1. *Substantial class and merits discovery has taken place.*

The complaint of Stacey Badon was filed on August 27, 2019. The complaint of Anthony Badon was filed on February 18, 2020. The two cases were consolidated for discovery and trial purposes on September 30, 2020. The case management order (Doc. 14) was entered September 30, 2020, and thereby setting Opt-In deadline on January 1, 2021.

In *Valcho,* the plaintiffs "had the benefit of three months of discovery," giving rise to a heightened evidentiary standard at the conditional certification step, rather than the "fairly lenient" standard from *Lusardi.*[15] Similarly, in *Thiessen v. Gen. Elec. Capital Corp.,*[16] the court noted the Plaintiff was "beyond the notice stage" after three months of discovery and having obtained opt-in Plaintiffs and analyzed the "similarly situated" issue under a heightened evidentiary standard. The Plaintiffs here have voluntarily submitted themselves to the heightened evidentiary standard.

      2. *Courts in the Fifth Circuit reject conditional certification when warranted by discovery.*

In *Basco v. Wal-Mart Stores, Inc.,* [17]the court refused to conditionally certify the collective action after considering the "substantial discovery" that had already been conducted. The courts' rational in *Basco* was that "[b]ecause the aim of collective actions is to promote judicial economy,

---

[13] *See, e.g. LaFleur v. Dollar Tree Stores,* 2012 WL 4739534 (E.D. Va. 2012).
[14] *Harris v. Fee Transp. Servs., Inc.,* 2006 WL 1994586, at *3 (N.D. Tex. 2006) (collecting cases).
[15] *Valcho*, 574 F. Supp. 2d at623 (N.D. Tex. 2008); *see* Case Management Order at Docket 67, p.7.
[16] 966 F. Supp. 1071, 1080-81 (D. Kan. 1998).
[17] 2004 WL 1497709 (E.D. La. 2004).

and substantial discovery has already been undertaken such that the court can make an educated decision as to whether certifying this matter as a collective action would survive the decertification process, the ends of judicial economy require the Court to make that inquiry at this stage."[18]   The *Basco* Court went further to say that, "[t]o create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved."[19]

In *Clay v. Huntington Ingalls, Inc.,*[20] the court determined that a "more demanding analysis of the certification issue [was] appropriate in light of the substantial discovery that [had] already taken place[.]"[21] The court ruled that "[t]he collective action mechanism of the FLSA serves no utility if thousands of plaintiffs join together in one lawsuit only to then try their claims individually," and determined that because of information revealed through discovery, "the Court should [not] simply ignore the fact that certain individualized defense might apply and postpone the issue until decertification."[22]

B.   Plaintiffs have disparate factual settings and are not "similarly situated" for application of the "economic realities" test to determine if these contractors are misclassified.

The test used in the Fifth Circuit to determine workers classification is known as the "economic realities" test[23]- that is, whether the alleged employee, as a matter of economic reality, is economically dependent upon the business to which he renders his services.[24]   In other words, it is up to the court to determine whether the individual is, as a matter of economic reality, in

---

[18] Id. at * 4.
[19] *Id.* at *4.
[20] 2012 WL 860375 (E.D. La. 2010).
[21] *Id.* at * 3(emphasis added).
[22] *Id.* at * 3; *Clay* claims to use an "in-between" approach, different from both *Lusardi* and *Shushan*.  Both *Valcho* and *Basco* claimed to use the *Lusardi* approach, but combine the first and second steps.
[23] *Herman v. Express Sixty-Minutes,* 161 F.3d 299 (5th Cir. 1998).
[24] *Brock v. Mr. W Fireworks, Inc.,* 814 F. 2d 141, 143 (5th Cir. 1981).

business for himself or herself.[25]  To accomplish this task, the court considers five factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the workers and alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship."[26] No single factor is determinative.[27]

While there are some district courts in the Fifth Circuit that hesitate to use the "economic realities" test at the condition certification stage,[28] in this matter the Court should analyze now whether the individual putative Plaintiffs are "similarly situated" in a way that will allow collective review of the "economic realities" later on the merits.  In *Andel v. Patterson _UTI Drilling Co., LLC,*[29] the court made this point clear:

> "Plaintiffs aver that all they need produce is 'some evidence [Defendant] subjected a group of similarly situated potential class members to a single decision, policy, or plan [in violation of] the FLSA.' (citations omitted). Plaintiffs would be correct if there was no question whether the putative plaintiffs fell under the protections of the FLSA, but, rather, only whether the class were similarly situated to one another and subject to a single decision, policy, or plan.  *Here, however, the court must first resolve whether the FLSA even covers each Plaintiff and, therefore, each putative plaintiff."*[30]

There is also this clarification from the Southern District on Texas: "The Court emphasizes that it is not applying the economic realities test at this phase to decide whether workers at [the Defendant] were improperly classified as independent contractors.  Instead, the Court is only evaluating whether Plaintiff has demonstrated that he and the putative class members are similarly

---

[25] *Donovan v. Techo, Inc.,* 642 F. 2d 141, 143 (5th Cir. 1981).

[26] *Reich v. Circle C. Investments, Inc.,* 998 F.2d 324, 327 (5th Cir. 1993).

[27] *Id.*

[28] Although reaching a different conclusion, these decisions bear out the district court has discretion in the Fifth Circuit.  *See., e.g., Heeg v. Adams Harris, Inc.,* 907 F. Supp. 2D 856, 864 (S.D. Tex. 2012) (comparing other circuits; motion based on complaint and affidavits, not substantial discovery); *Walker v. Honghua Am.,* 870 F. Supp. 2d 462, 470 (S.D. Tex. 2012) (noting same split among district courts even in Texas).

[29] 280 F.R.D. 287 (S.D. Tex. 2012).

[30] *Andel,* 280 F.R.D. at 295 (from magistrate's recommendation adopted by district court denying condition certification) (emphasis added and in original).

situated for purposes of applying the economic realities test at the appropriate phase of this case in the future."[31]

To differentiate Plaintiffs from each other and the Opt-In Contractors.  First, most of the Opt-In contractors did not work more than 40 hours.  To noted, the following individuals: Altravese Gardner, Bernette Kinard, Chanell Wilson, Dereinisha Johnson, Diane Jones, Gloria Williams, Helen Hudson, Kwane Harris, Rachel Williams, Shena Day, Sheneatha Baptiste, Treonda Irvin, Terry Watson, Rena Lyons, Francis Pessoa and Mary Morgan worked 40 hours or less.  Second, the other individuals; all were paid by and through Department of Labor.  Candonias Banks filed her consent after January 1, 2021 after the opt in period.  Anthony Badon filed with the Department of Labor but was denied because the number of hours possible worked.  Therefore, Stacey Badon is the only individual within the collective action.

## IV.    CONCLUSION

Conditional certification should be denied, and the Court is directed to Berry's response to Plaintiffs' Motion for Conditional Certification for additional specific relief requested.  The United States Court of Appeals for the Fifth Circuit recently in *Swales v. KLLM Transport Services, LLC* No. 19-60847, explained how, the FLSA's similarity requirement is something that district courts rigorously enforce at the outset of the litigation.  Also, please note that the court for the first time, rejected *Lusardi* and thereby vacated the district court's order granting Plaintiffs' motion for conditional certification.[32]

This the 9th day of February, 2021.

---

[31] *Christianson v. NewPark Drilling Fluids, LLC,* 2015 WL 1268259, at * 4 (S.D. Tex. 2015).
[32] *Swales v. KLLM Transport Services, LLC* No. 19-60847.

Respectfully submitted,


/s/ Larry M. Aisola, Jr.
LARRY M. AISOLA, JR., #27934
208 W. Judge Perez Drive
Chalmette, Louisiana 70043
Telephone: (504) 913-6182
Telecopier: (504) 682-6668
E-mail: LawLMAJ@aol.com

## CERTIFICTE OF SERVICE

I certify that on February 9, 2021, I electronically filed the foregoing with the Clerk of

court by using the CM/ECF system which will send a notice of electronic filing to all counsel of

record.


/s/ Larry M. Aisola, Jr.
LARRY M. AISOLA, JR.