## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STACEY BADON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12317 c/w 20-584** |
| **BERRY'S RELIABLE RESOURCES, LLC,** | **SECTION D (3)** |
| **ET AL.** | |

### THIS ORDER RELATES TO ALL CASES

### ORDER

Before the Court is Defendants' Motion to Decertify the Conditionally Certified Collective Action.[1] The Motion is opposed.[2] After careful review of the Motion, the parties' briefs, and the applicable law, the Court denies the Motion.

### I.   FACTUAL BACKGROUND

This case involves a wage dispute. According to the Complaint, Plaintiff Stacey Badon began working for Defendant Berry's Reliable Resources, a home health caregiver, in 2016.[3] Plaintiff alleges she was paid an hourly wage of $8.00.[4] Plaintiff further alleges that she worked fifty-six hours per week performing services for Defendants' clients but was never paid overtime for the hours she worked in excess of forty hours per week.[5] Plaintiff filed this suit on August 27, 2019, alleging she had been underpaid under the Fair Labor Standard Act.[6] Badon's Complaint alleges a

---

[1] R. Doc. 66.
[2] R. Doc. 68.
[3] R. Doc. 1 at 7 ¶ 31.
[4] *Id.* at 7 ¶ 33.
[5] *Id.* at 7 ¶¶ 34-35.
[6] *See generally id.*

collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons since August 2016 who worked for Defendants and were not paid overtime.[7]  Anthony Badon filed a similar Complaint,[8] and his case was consolidated with Stacey Badon's.[9]

Earlier in this litigation, the Court conditionally certified a FLSA collective action under the first step of *Lusardi v. Xerox Corp.*[10] The specific collective action the Court conditionally certified was:

> All persons employed by Defendants since February 2017 who were paid on an hourly basis but were not paid at an overtime rate of one and one-half times their hourly rate of pay for each hour worked in excess of 40 per week in violation of the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*, due to Defendants' deliberate and willful refusal to pay overtime that was owed under the FLSA.[11]

The Court issued an amended scheduling order, stating that by January 1, 2021, "all opt-in forms for all Plaintiffs in the conditional class must be filed into the record."[12] The scheduling order also allowed Defendants to move to decertify the collective action under the second step of *Lusardi.*[13]

Via notices filed on October 21, 2020,[14] November 2, 2020,[15] November 10, 2020,[16] and December 16, 2020,[17] a total of twenty-one Opt-Ins joined the conditionally-certified collective action.  Plaintiffs later moved to withdraw various

---

[7] *Id.* at 4-7 ¶¶ 22-30.
[8] Docket No. 20-584, R. Doc. 1.
[9] R. Doc. 47.
[10] 116 F.R.D. 351 (D.N.J. 1987).
[11] R. Doc. 37.
[12] R. Doc. 43 at 1
[13] *Id.*
[14] R. Doc. 55.
[15] R. Doc. 58.
[16] R. Doc. 59.
[17] R. Doc. 61.

Opt-Ins from the collective action, as a review of the payroll records demonstrated that those Opt-Ins lacked a claim for unpaid overtime.[18]   Accordingly, the conditionally-certified collective action now consists of only six class members: Stacey Badon, Anthony Badon, Deborah Ann Carson, Francine Dixon, Shena Day, and Tenika Benn.

Defendants move to decertify the FLSA collective action.[19]  Defendants argue that based on the amount of discovery done to date, the Court should apply a stringent review of the certification of the collective action.  Defendants further argue that the members of the collective action are not similarly situated and that their claims will require an individualized analysis.  Defendants assert that its workers were independent contractors; therefore, a significant question will be whether the employees were misclassified by Defendants.  Defendants also contend that various members of the class did not work more than forty hours, and those that did work more than forty hours were paid by the Department of Labor.

Plaintiffs oppose Defendants' Motion.[20]  They argue that Defendants largely raise questions which go to the merits of the action, which are irrelevant at this stage where the Court seeks to determine only whether the case may proceed as a collective action.  Plaintiffs also argue that Defendants' primary defense—that the members of

---

[18] R. Doc. 88 (Motion); R. Doc. 94 (Order).

[19] R. Doc. 66. Notably, Defendants' Motion to Decertify was filed prior to the withdrawal of many of the Opt-ins which left only six members of the conditionally certified collective action. As such, many of Defendants' arguments in its motion no longer apply. In fact, Defendants assert "Only six of the names submitted by the plaintiffs may be similarly situated." See R. Doc. 66 at 2 ¶ 6.  Nevertheless, the Court undertakes a thorough review to make its own determination of whether the matter should appropriately proceed as a collective action.

[20] R. Doc. 68.

the class were independent contractors and not employees—can be litigated at a collective level. Finally, Plaintiffs note that certain discovery remains outstanding, making decertification inappropriate at this time.

## II.    LEGAL STANDARD

The FLSA permits employees to sue an employer for FLSA violations as a collective action on behalf of themselves and "other employees similarly situated."[21] "Congress's purpose in authorizing § 216(b) actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer."[22] A collective action under Section 216(b) binds only those employees who affirmatively "opt-in" to the suit. The statute states: "No employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which the action is brought."[23] A district court has broad discretion in deciding whether to grant or deny certification and broad authority over notice in order to prevent the misuse of such actions.[24]

Previously, the more popular approach in this Circuit when determining whether to certify a collective action under 28 U.S.C. § 216(b) was the approach outlined in *Lusardi v. Xerox Corp.*[25] The Court therefore initially proceeded under

---

[21] 29 U.S.C. § 216(b).

[22] *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008) (quoting *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003)).

[23] 29 U.S.C. § 216(b).

[24] *See Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

[25] 116 F.R.D. 351 (D.N.J. 1987). *See, e.g., Xavier v. Belfor USA Grp.*, 585 F. Supp. 2d 873, 876 (E.D. La. 2008) (describing the *Lusardi* approach as the "preferred method"); *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *7 (E.D. La. Dec. 30, 2011) (noting that the *Lusardi* approach is the "more common" approach and is routinely used in the Eastern District of Louisiana).

the two-stage certification approach of *Lusardi*. The first stage of the *Lusardi* approach, which is at issue here, is known as the "notice" stage.[26]  At this stage, the Court makes a determination whether to "conditionally" certify the collective action and authorize notice to potential class members.[27]   The certification is only "conditional" because at the second stage of the *Lusardi* approach, the Court may decertify the collective action if there is a showing that the case is not appropriate for consideration as a collective action.[28]

In *Swales v. KLLM Transport Services, L.L.C.,*[29] the Fifth Circuit recently rejected the two-stage *Lusardi* approach.  Although the Fifth Circuit's opinion focused primarily on issues with the first stage of *Lusardi*,[30] which has passed in this case, the *Swales* Court's rejection of *Lusardi* has important implications for the issue before the Court here.  Specifically, the *Swales* Court held that at the outset of the litigation, the district court should "rigorously enforce" Section 216(b)'s requirement that parties be "similarly situated."[31]  The Court also held that plaintiffs have the burden of demonstrating that plaintiffs and opt-ins are similarly situated.[32]  Finally, the Fifth Circuit held that "[t]he bottom line is that the district court has broad, litigation-management discretion here."[33]

---

[26] *Mooney,* 54 F.3d at 1213.
[27] *Id.* at 1213-14.
[28] *Id.* at 1214.
[29] 985 F.3d 430 (5th Cir. 2021).
[30] *Id.* at 439 ("We review de novo the question of law at issue—the legal standard that district courts should use when deciding whether to send notice in an FLSA collective action.").
[31] *Id.* at 443.
[32] *Id.* at 443 n.65.
[33] *Id.* at 443.

## III.   ANALYSIS

There has been a significant shift in the law governing this dispute since the Court conditionally certified Plaintiff's collective action.  Specifically, *Swales* rejected the *Lusardi* approach on which that conditional certification was based.[34]   Post-*Swales*, the question the Court must answer now is the same question it would ask at the second stage of the *Lusardi* analysis:  are Plaintiffs and Opt-Ins sufficiently "similarly situated" such that this case should proceed on a collective basis?  To determine whether or not plaintiffs and opt-ins are similarly situated in the context of a collective action, courts often consider three factors:  "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[35]

The primary dispute in this matter is whether Plaintiffs and Opt-Ins were independent contractors or employees.  Therefore, the issue before the Court is whether the individuals in the collective action are "similarly situated" such that they may be collectively determined to be employees or independent contractors.  Only employees are subject to the FLSA; independent contractors are not.  A determination that the members were independent contractors ends the inquiry.  The Fifth Circuit

[34] Had *Swales* been decided before the Court's conditional certification of the collective action, the Court would have ordered limited discovery be conducted to help determine whether the parties are "similarly situated" such that the case should proceed on a collective basis.  Because *Swales* was decided after the conditional certification of the collective action, notice was sent out to potential Opt-Ins based on the standards applied in the first stage of *Lusardi*.  But the discovery done to date allows the Court to engage in an analysis of whether the Plaintiffs and Opt-Ins are similarly situated, as would be required by *Swales* or at the second stage of *Lusardi*.

[35] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001).

uses the "economic-realities test" to determine whether an individual is an independent contractor or an employee.  That test requires the Court to consider (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.[36] The Court now determines whether Plaintiffs have provided sufficient evidence that Plaintiffs and Opt-Ins are similarly situated to allow for such an inquiry at trial.

Admittedly, the evidence before the Court to determine whether Plaintiffs and Opt-Ins are similarly situated is thin.[37]  That said, what evidence is before the Court suggests that the members of the conditional class are similarly situated so that this matter could appropriately be tried on a collective basis.  Plaintiffs have provided the affidavits of Stacey Badon and Anthony Badon, which indicate that the factual and employment settings for home healthcare workers vis-à-vis Defendants were similar.[38] Indeed, as noted above, Defendants admit in their Motion to Decertify that "[o]nly six of the names submitted by the plaintiffs may be similarly situated according to documents submitted/available relative to the limited discovery

---

[36] *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 327 (5th Cir. 1993).

[37] As of Plaintiffs' Opposition, the only discovery that remains outstanding was documents from three unidentified opt-ins who may not longer be in the collective action.  *See* R. Docs. 88 and 94. Accordingly, the Court finds that a "more demanding analysis" into the certification issue is appropriate here, as discovery is largely complete. *Clay v. Huntington Ingalls, Inc.*, No. 09-7625, 2012 WL 860375, at *3 (E.D. La. 2010).

[38] *See* R. Doc. 9-2 (Affidavit of Stacey Badon); R. Doc. 9-3 (Affidavit of Anthony Badon).

conducted by defendants."[39]   This factor falls in favor of finding the members similarly situated. Regarding various defenses available to defendant which appear to be individual to each plaintiff, Plaintiffs argue that Defendants' primary defense is that Plaintiffs and Opt-Ins were independent contractors.  While this generally requires application of the economic-realities test, Plaintiffs point out that "Defendants assert this defense universally, claiming it applies to all home healthcare workers that it retained during the applicable period."[40]  Plaintiffs point to deposition testimony of Raeon Williams to establish that the defense is presented universally.[41]  Defendants conceded as much in their Motion to Decertify, focusing the substance of their Motion on their claim that the individuals were independent contractors rather than employees.[42] Plaintiffs contend that Defendants will not be forced, nor does it appear they intend, to raise multiple defenses to Plaintiffs and the Opt-Ins. Finally, as to fairness and procedural considerations, the Court notes that the collective action now contains only six members in total—a far cry from collective actions containing dozens or hundreds of members, which would present larger procedural concerns.  In such a setting, there is less of a risk that the case will "quickly devolve into a cacophony of individual actions."[43]  Considering the evidence placed before the Court which address factual and employment settings, Defendants' apparent defenses, and procedural and fairness considerations, the Court finds that

---

[39] R. Doc. 66 at 2 ¶ 3.
[40] R. Doc. 68 at 5.
[41] *See* R. Doc. 68-1.
[42] R. Doc. 66-1.
[43] *Swales*, 985 F.3d at 442.

Plaintiffs have carried their burden of demonstrating this matter may be tried as a collective action.

Defendants arguments that the conditionally certified collective action should be decertified fail. The only evidence Defendant places before the Court is an affidavit from Rhonda Williams, in which she testifies that certain Opt-Ins never worked more than forty hours a week.[44]  The Court notes that with one exception,[45] that issue was resolved when Plaintiffs withdrew various Opt-Ins from the collective action. Defendants also argue that discovery to date makes clear that the economic realities test cannot be practically applied to the collective action members in this case. Defendants fail to put forth any evidence to counter Plaintiffs' evidence, or to persuade the Court that the economic-realities test could not be collectively applied to the six individuals at issue in this matter and the Court again notes that Defendants' Motion was filed before Plaintiffs moved to remove numerous Opt-ins from the collective action.  Accordingly, the Court will deny Defendants' Motion to Decertify.

---

[44] R. Doc. 66-4.
[45] Shena Day.

IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to Decertify is **DENIED**. **IT IS FURTHER ORDERED** that is case is certified as a collective action.

New Orleans, Louisiana, March 11, 2021.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**