UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STACEY BADON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12317 c/w 20-584 and 21-596** |
| **BERRY'S RELIABLE RESOURCES, LLC, ET AL.** | **SECTION D (3)** |

**THIS ORDER RELATES TO ALL CASES**

**ORDER AND REASONS**

Before the Court is Plaintiffs' Motion for Partial Summary Judgment.[1] The Motion is opposed,[2] and Plaintiffs have filed a Reply.[3] After careful review of the Motion, the parties' briefs, the record, and the applicable law, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment.

### I.   FACTUAL BACKGROUND

This case involves a wage dispute. On August 27, 2019, Plaintiff Stacy Badon filed a Complaint alleging she had been underpaid under the Fair Labor Standard Act ("FLSA").[4] According to the Complaint, Badon began working for Defendant Berry's Reliable Resources, a home health caregiver, in 2016.[5] Plaintiff alleges she was paid an hourly wage of $8.00.[6] Plaintiff further alleges that she worked fifty-six hours per week performing services for Defendants' clients but was never paid

---

[1] R. Doc. 203.
[2] R. Doc. 210 (Defendants original opposition contained at R. Doc. 205 was marked deficient).
[3] R. Doc. 212.
[4] *See generally id.*
[5] R. Doc. 1 at 7 ¶ 31.
[6] *Id.* at 7 ¶ 33.

overtime for the hours she worked in excess of forty hours per week.[7] Badon's Complaint alleges a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons since August 2016 who worked for Defendants and were not paid overtime.[8] On February 18, 2020, Anthony Badon filed a similar Complaint,[9] and his case was consolidated with Stacey Badon's.[10] Both Plaintiffs also assert a claim under the Louisiana Wage Payment Act ("LWPA"), in which Plaintiffs allege that Defendants improperly deducted costs for workers compensation and failed to repay Plaintiffs after their termination.[11]

On April 26, 2022, Plaintiffs filed a Motion for Partial Summary Judgment on the issue of whether Plaintiffs are properly classified as "independent contractors" or "employees."[12] In their motion, Plaintiffs argue that the Plaintiffs were employees of the Defendants under both the FLSA and LWPA because Plaintiffs were not able to independently contract with the state to provide services to consumers and because of the level of control exerted by Defendants over them.[13] Defendants oppose the motion and contend that Plaintiffs have failed to present any new evidence and are independent contractors as expressly indicated by the parties' subcontract agreement

---

[7] *Id.* at 7 ¶¶ 34-35.
[8] *Id.* at 4-7 ¶¶ 22-30.
[9] Docket No. 20-584, R. Doc. 1.
[10] R. Doc. 47.
[11] *See* R. Doc. 1 at 8-9; Docket No. 20-584, R. Doc. 5 at 6-7.
[12] R. Doc. 203. The Court notes that it previously denied cross Motion for Summary Judgment and allowed the parties further discovery. *See* R. Doc. 157. Subsequently, after allowing for additional discovery and continuing the trial, the Court, finding good cause, amended its Scheduling Order and permitted Plaintiffs to file a dispositive motion addressing whether the Plaintiffs in this case should be classified as employees or independent contractors. *See* R. Doc. 202. R. Doc. 203 is the subject of this Order and Reasons.
[13] *Id.*

and by the Plaintiffs' actions.[14] Plaintiffs filed a reply arguing that they were employees because the Defendants determined what work they did, supervised their work, and had the ability to fire them.[15]

## II.   LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[16] When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[17] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[18] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[19]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[20] The

---

[14] R. Doc. 210.
[15] R. Doc. 212.
[16] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[17] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).
[18] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[19] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248).
[20] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[21] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[22] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[23]

### B. Employee Status Under the Fair Labor Standards Act.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."[24] The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'"[25] An entity "suffers or permits" an individual to work if, as a matter of "economic reality," the entity functions as the individual's employer.[26] The factors considered under the "economic reality" test include: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged

---

[21] *Id.* at 1265.
[22] *See Celotex Corp.*, 477 U.S. 317, 322-23.
[23] *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).
[24] 29 U.S.C. § 203(d).
[25] *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, (quoting 29 U.S.C. § 203(g)).
[26] *See Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961).

employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.[27] This test has been described as a "fact intensive inquiry."[28] The crux of the analysis is whether the worker is "economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself."[29] Importantly, the labels the parties assign to the relationship is not dispositive of the inquiry.[30] That said, explicit contractual arrangements may be evidence of an employer-employee relationship or lack thereof.[31]

### C. Employee Status under the LWPA

The LWPA does not contain a definition of the term "employee."[32] As outlined in its previous Order,[33] in determining whether an employer/employee relationship exists, the court considers the factors set forth in *Hickman v. Southern Pacific Transport Company*.[34] These factors are:

(1) whether there is a valid contract between the parties;
(2) whether the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;

---

[27] *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324 (5th Cir. 1993); *Usery v. Pilgrim Equip. Co.*, Inc., 527 F.2d 1308 (5th Cir. 1976), cert denied, 429 U.S. 826, 97.
[28] *Seong Song v. JFE Franchising, Inc.*, 394 F. Supp. 3d 748, 755 (S.D. Tex. 2019).
[29] *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).
[30] *See Coronado v. D.N.W. Houston, Inc.*, No. 13-2179, 2014 WL 2779548, at *2 (S.D. Tex. June 19, 2014) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)).
[31] *Imars v. Contractors v. Manufacturing Servs., Inc.*, 165 F.3d 27 (6th Cir. 1998) (citing *Robicheaux v. Radcliff Mat'l*, 697 F.2d 662, 665 (5th Cir. 1983)).
[32] *Hulbert v. Democratic State Central Committee of Louisiana*, 2010-1910 (La. App. 1 Cir. 6/10/11); 68 So. 3d 667, 670.
[33] R. Doc. 157.
[34] 262 So.2d 385, 390-91 (1972); *Hulbert*, 68 So. 3d at 670; *see also Gordon v. Hurlston*, 03-0112 (La. App. 3 Cir. 9.10.03); 854 So. 2d 469; *Glover v. Diving Services Int'l, Inc.*, 577 So. 2d 1103 (La. App. 1 Cir. 1991).

    (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered;
    (4) whether there is a specific price for the overall undertaking agreed upon; and
    (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.[35]

The appearance of control is the principal factor to determining whether an employee/employer relationship exists.[36] It is not whether the defendant actually controlled the plaintiff's performance, but whether the defendant had the right to do so that is key.[37]

### III. FACTUAL BACKGROUND

#### A. Employee Status under the FLSA

As an initial matter, the Court notes that it has previously determined that the FLSA applies should the Court determine that Plaintiffs are employees of Defendants.[38] The Fifth Circuit has held that "the ultimate conclusion that an individual is an 'employee' within the meaning of the [Fair Labor Standards Act] is a legal determination rather than a factual one."[39] Applying the economic realities test

---

[35] *Hickman v. Southern Pacific Transport Company*, 262 So.2d 385 (La. 1972).
[36] *Hulbert*, 68 So. 3d at 670.
[37] *Id.*
[38] R. Doc. 157. Specifically, after an analysis of the evidence supporting enterprise coverage, this Court stated: "[t]he Court finds that Plaintiffs and Opt-Ins are subject to enterprise coverage, and thus, should they be determined to be employees, they fall within the scope of the FLSA." Accordingly, Defendants' argument in its Opposition (R. Doc. 205) that the FLSA does not apply to the present case because the Plaintiffs were not sufficiently engaged in interstate commerce is rejected.
[39] *See Lindsley v. BellSouth Telecomms. Inc.,* 401 Fed.Appx. 944, 945 (5th Cir. 2010) (citing *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1045 (5th Cir. 1987)).

enunciated above by the Fifth Circuit, the Court now determines whether Plaintiffs qualify as employees under the FLSA.

Applying the first factor of the economic realities test, the Court evaluates the employer's right to control the work completed by Plaintiffs.[40] Plaintiffs argue that Defendants controlled every aspect of their employment and had supervisory control over them.[41] In response, Defendants contend that the work conducted by Plaintiffs was dictated by the State of Louisiana's Plan of Care for each consumer, not by the Defendants.[42] Defendants further argue that they did not supervise Plaintiffs while at work.[43]

In support of the first factor, Plaintiffs have provided the testimony of Terry Cooper, the representative of the Louisiana Department of Health. Ms. Cooper testified that it was the Defendant's "responsibility to assure that their employee or contract staff is adhering to what their assignment is and that they are adequately trained to perform the duties that they are assigned."[44] Ms. Cooper further testified that a direct service worker, such as Plaintiffs, cannot receive payment through these state programs directly.[45] Ms. Cooper stated that the Plaintiffs were not on the payroll of the state, the state did not dictate their rate of pay, and the state did not directly involve themselves with the hiring and firing of these direct service

---

[40] *Reich*, 998 F.2d 324.
[41] R. Doc. 203.
[42] R. Doc. 210.
[43] *Id.*
[44] R. Doc. 203-4.
[45] *Id.*

workers.[46] Accordingly, Plaintiffs contracted with Defendants and were dependent upon their relationship with Defendants to receive consumers and work.[47]

In addition, Defendants have admitted to exercising supervisory control over Plaintiffs.[48] Specifically, Defendants hired employees called Service Coordinators whose job was to "supervise [DSWs] in consumer's homes."[49] Service Coordinators checked Plaintiffs' work with consumers, provided general oversight, and responded to any complaints.[50] In her deposition, Rhonda Williams explained that her job for the Defendants was "to oversee to make sure that the DSW is doing the allotted hours that the state has given."[51] Further, the contracts signed by Plaintiffs prohibited them from "alter[ing] in type, scope or duration" the services they provided from the plan provided to them by Defendants.[52] Accordingly, this factor weighs in favor of determining that Plaintiffs were employees under the FLSA.

Turning to the second factor, the Court evaluates the Plaintiffs' investment in equipment and materials.[53] Plaintiffs argue that Defendants or the consumers provided the Plaintiffs with the materials needed to perform their jobs.[54] Plaintiffs assert that they did not provide their own materials but rather used those supplied by Defendants or the consumers.[55] In support, Plaintiffs point to the deposition

---

[46] *Id.*
[47] R. Doc. 203-3; R. Doc. 203-7.
[48] R. Doc. 198, Joint Pre-Trial Order, Uncontested Material Fact Nos. 105-119.
[49] R. Doc. 203-6; *see also* R. Doc. 203-3.
[50] *Id.*
[51] R. Doc. 203-3.
[52] R. Doc. 203-9.
[53] *Reich*, 998 F.2d 324.
[54] R. Doc. 203-6 at p. 68.
[55] R. Doc. 203 (citing R. Doc. 203-6 at p. 68, which states only that Defendants provided timesheets to Plaintiffs but does not address any materials supplied).

testimony of Raeon Williams, Defendant's employee who supervised payroll, who testified that time sheets were provided by Berry's to the direct service workers.⁵⁶ Defendants do not address this factor. While noting the parties' arguments, Court finds that it is unclear whether Plaintiffs supplied their own equipment or materials other than the timesheets as reflected above. Thus, this factor is neutral, or tilts slightly in favor of finding employee status, in regard to determining whether Plaintiffs were employees under the FLSA.

Third, the Court must determine if the Plaintiffs had the ability to control their profits and losses.⁵⁷ Plaintiffs argue that their work duties, including the number of hours they worked, were established by Defendants in accordance with the Plan of Care for each consumer.⁵⁸ Further, Plaintiffs argue that Defendants established each Plaintiffs' rate of pay, issued payments, and issued payroll policies governing Plaintiffs' pay.⁵⁹ In support, Plaintiffs cite to the uncontested material facts outlined in the parties' joint proposed pre-trial order.⁶⁰ These facts include admissions from the Defendants that they set the rate of pay for each Plaintiff,⁶¹ the payroll policies that governed how Plaintiffs were paid,⁶² and issued payments to Plaintiffs.⁶³ In response, Defendants contend that the State of Louisiana created the Plan of Care

---

⁵⁶ R. Doc. 203-6 at 68.
⁵⁷ *Reich*, 998 F.2d 324.
⁵⁸ R. Doc. 203.
⁵⁹ R. Doc. 203 (citing R. Doc. 198, Joint Pre-Trial Order, Uncontested Material Fact Nos. 75-89, 120-134, and 135-149).
⁶⁰ R. Doc. 198.
⁶¹ R. Doc. 198, Uncontested Material Fact Nos. 75-89.
⁶² R. Doc. 198, Uncontested Material Fact Nos. 111-121.
⁶³ R. Doc. 198, Uncontested Material Fact Nos. 100-110.

for each consumer, not Defendants.[64] Here, there is no evidence that Plaintiffs could make more or less money based on the quality of the work they performed or could work additional hours in order to earn additional pay. There is also no evidence that Plaintiffs were able to control when they worked. Instead, the evidence reveals that these matters were controlled by Defendants. Accordingly, this factor also weighs in favor of determining that Plaintiffs were employees under the FLSA.

Fourth, the Court must determine whether the work conducted by Plaintiffs requires special skills.[65] Plaintiffs argue that they were required to undergo training by Defendants in order to be qualified to provide services to consumers.[66] Plaintiffs cite to testimony from Raeon Williams, Defendant's employee, who testified in her deposition that Defendants required Plaintiffs to undergo 16 hours of mandatory orientation and training.[67] Defendants counter that the State of Louisiana mandates that workers such as Plaintiffs receive training and that training was provided by a third-party, specifically Associates for Community Entry. Defendants provide a certificate indicating that Francine Dixon completed training at Associates for Community Entry to support their argument.[68] Defendants' evidence, however, ignores that Defendants outsourced the training to the third party, Associates for Community Entry. Accordingly, the Court finds that Defendants provided training to Plaintiffs to perform special skills, even though they outsourced the training itself to

---

[64] R. Doc. 210.
[65] *Reich*, 998 F.2d 324.
[66] R. Doc. 203-6 at p. 43; *see also* R. Doc. 198, Joint Pre-Trial Order, Uncontested Material Fact No. 6.
[67] R. Doc. 203-6 at p. 43.
[68] R. Doc. 210' *see also* R. Doc. 210-7.

a third-party. Thus, this factor, too, weighs in favor of determining that Plaintiffs are employees under the FLSA.

Fifth, the Court must determine the degree of permanence of the work relationship.[69] Plaintiffs provide evidence, specifically payroll stubs issued to Plaintiffs including Stacey Badon, to establish that some of the direct service workers were employed for long periods of time, including for several years.[70] Defendants do not contest this fact. However, Defendants also point to the fact that Anthony Badon stated in his deposition that he worked for another home care agency.[71] It is unclear when Anthony Badon worked for another company, for how long, or what work he did. Here, because each of the Plaintiffs worked for varying lengths of time for Defendants, the Court finds that this factor is neutral in regard to determining whether Plaintiffs were employees of Defendant.

Determining whether an individual is an employee under the FLSA is a "fact intensive inquiry."[72] However, the crux of the analysis is whether the worker is "economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself."[73] Plaintiffs, as direct service workers, are required to work with providers, like Defendants, in order to receive consumers.[74] Accordingly, Plaintiffs are economically reliant on Defendants.

---

[69] *Reich*, 998 F.2d 324
[70] R. Doc. 203-11 (Paystubs and Payroll Registers Produced by Defendants for Plaintiffs); *see also* 203-6 at p.70.
[71] R. Doc. 210-5. Notably, Badon does not explain when he was working for an additional employer besides Defendants.
[72] *Seong Song*, 394 F. Supp. 3d at 755.
[73] *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).
[74] *See* R. Doc. 203-3 at p. 44; R. Doc. 203-4 at p. 26.

Further, the labels the parties assign to their relationship are not dispositive.[75] Defendants contend that the direct service workers signed contracts titled "service subcontract" with Defendants indicating that the workers were independent contractors.[76] However, Courts have held that the rights of parties to a contract are determined by the substance of the contractual relationship, rather than the title of it.[77] Here, while the contract between Plaintiffs and Defendants is labelled as a "service subcontract," the parties' relationship reveals that the Defendants exercised control and supervision over Plaintiffs.[78] Thus, the Court determines that the mere existence of a contract is not conclusory of the Plaintiffs economic reliance on Defendants. Having determined that a majority of the five factors of the economic realities test weigh in favor of finding that Plaintiffs were employees of Defendants,[79] the Court holds that Plaintiffs were employees of Defendants and thus the FLSA applies to their claims.

### B. Employee Status under the LWPA

Plaintiffs have also brought claims against Defendants under Louisiana's Wage Payment Act ("LWPA").[80] Louisiana law states that claims involving unpaid

---

[75] *See Coronado v. D. N.W. Houston, Inc.*, No. 13-2179, 2-14 WL 2779548, at *2 (S.D. Tex. June 19, 2014) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)).
[76] R. Doc. 205.
[77] *Simon v. Farm Bureau Ins. Co.*, 297 So. 3d 147, 152 (La. Ct. App. 2020) (citing *Hughes v. Goodreau,* 01-2107 (La.App. 1 Cir. 12/31/02), 836 So.2d 649, writ denied, 03-232 (La. 4/21/03), 841 So.2d 793 (citing *Monsanto Co. v. St. Charles Parish School Bd.*, 94-2145, pp. 5-6 (La. 2/20/95), 650 So.2d 753, 756-57)).
[78] R. Doc. 203-9.
[79] The Court notes that three of the five factors fall in favor of finding employee status even if the Court considers that factor number two, the plaintiffs' investment in equipment or material, as neutral on the issue.
[80] *See* R. Doc. 1 at 8-9; Docket No. 20-584, R. Doc. 5 at 6-7; *see also* La. R.S. 23:631.1(A)(1)(a).

wages are authorized to be tried under as a summary proceeding.[81] Summary proceeding are ones "which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings."[82] Louisiana courts have subsequently held that lawsuits involving claims for unpaid wages are appropriately determined by the court without a jury as summary proceedings.[83] Accordingly, the Court must determine whether Plaintiffs are "employees" under the LWPA.

The Court first must determine whether there is a valid contract between Plaintiffs and Defendants.[84] Neither party contests that there were signed agreements between the parties.[85] As described above, these contracts are titled "service subcontracts."[86] This factor falls in favor of finding that the Plaintiffs were not employees under the LWPA.

Next, the Court must determine whether the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it and whether the contract calls for specific work to be done in accordance with the Plaintiffs' standards and without being subject to the control and direction of the Defendants.[87] Plaintiffs argue, and Defendants do not contest, that

---

[81] La.R.S. 23:631(B); *see also* La.Code Civ.P. art. 2592(12).
[82] La.Code Civ.P. art. 2592.
[83] *Fahed v. Ayesh*, 16-748, p. 12 (La.App. 3 Cir. 2/15/17), 211 So.3d 1179, 1187-88 (in which claims under the LWPA were tried by the trial court without a jury via summary proceedings); *see also Hannie v. Colonial Oaks AL Lafayette Employer, LLC*, 334 So. 3d 17 (La. Ct. App. 3d Cir. 2022) (stating that summary proceedings are specifically authorized for claims involving unpaid wages and in which claims under the LWPA were determined by the trial court without a jury).
[84] *Hickman*, 262 So.2d 385.
[85] *See* R. Doc. 203-9, which includes contracts between Plaintiffs and Defendants.
[86] R. Doc. 203-9.
[87] *Hickman*, 262 So.2d 385.

Plaintiffs cannot independently contract and work with consumers.[88] As testified by Ms. Cooper, the representative of the Louisiana Department of Health, direct service workers such as Plaintiff, cannot receive payment through state programs directly and instead must work for a provider.[89] Ms. Cooper testified that the workers were not on the payroll of the state, the state did not dictate their rate of pay, and the state did not directly involve themselves with the hiring and firing of these direct service workers.[90] Plaintiffs argue they were required to adhere to plans provided by Defendants and abide by Defendants' work standards.[91] Defendants contend that Defendants had the right to reject work and could work with other companies besides Defendants.[92]

Here, the contract signed by Plaintiffs requires that Plaintiffs provide services in accordance with the consumer plans provided to them and may not alter the consumer service plan by "type, scope or duration."[93] Further, Plaintiffs were required by their contracts to meet the same requirements as if they were part of the Defendants staff, such as "staff qualifications, functions, evaluations, orientation, and in-service training."[94] As previously described, Defendants also employed Service Coordinators who supervised Plaintiffs as they provided services to consumers.[95]

---

[88] R. Doc. 203-3 at p. 44; R. Doc. 203-4 at p. 26. Defendants point to the tax returns of Anthony Badon (R. Doc. 210-8) as proof that he worked with a separate company, Amazing Care Service, and thus was an independent contractor. It is unclear from the evidence provided what work Badon did for this company and how it indicates that Badon was an independent contractor.
[89] *Id.*
[90] *Id.*
[91] R. Doc. 203-9; *see also* 203-3 at pp. 38, 44; *see also* 203-6 at p. 25.
[92] R. Doc. 205.
[93] R. Doc. 203-9.
[94] *Id.*
[95] R. Doc. 203-6; *see also* R. Doc. 203-3.

Accordingly, the Court finds that the work conducted by Plaintiffs was not to be accomplished in accordance with the Plaintiffs' methods, but rather at the Defendants' direction, and was subject to the control and direction of the Defendants. Thus, this second factor falls in favor of finding employee status under the LWPA.

Next, the Court must determine whether there was a set price for the overall contract.[96] Here, the contract between Plaintiffs and Defendants states an hourly rate that Plaintiffs will receive upon working for Defendants, but no price is set for the overall work to be provided under the contract.[97]

Finally, the Court must determine whether the contract between Plaintiffs and Defendants is for a specific time and not subject to termination by either party without liability.[98] Here, the contracts are for set periods of time but can be terminated by either party upon certain conditions.[99] For example, Plaintiff Stacey Badon entered into an agreement to work from "January 1, 2016 through April 30, 2016 unless otherwise terminated by either party."[100] Badon was permitted to terminate the agreement either with or without cause provided he sent Defendants prior written notice.[101] Badon also entered into multiple contracts with Defendants for additional periods of work.[102] Accordingly, this factor weighs in favor of finding Plaintiffs were independent contractors under the LWPA.

---

[96] *Hickman*, 262 So.2d 385.
[97] R. Doc. 203-9.
[98] *Hickman*, 262 So.2d 385.
[99] R. Doc. 203-9.
[100] *Id.*
[101] *Id.*
[102] *Id.* Badon also entered into agreements with Defendants to work from May 1, 2016 through April 30, 2017 as well as January May 1, 2018 through April 30, 2019,

"The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principal test: the control over the work reserved by the employer. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists."[103] Keeping in mind that the appearance of control is the principal factor to determining whether an employee/employer relationship exists,[104] the Court determines that Plaintiffs were employees under the *Hickman* factors. The evidence reveals that Defendants controlled hiring and firing, supervised Plaintiffs' work with consumers and required Plaintiffs to comply with Berry's policies and attend trainings arranged by Defendants. In addition, Defendants handled the payroll and paid the Plaintiffs on an hourly basis. The evidence in the record clearly supports that Defendants not only had the right to control the work of the Plaintiffs, but it actually did so. Accordingly, Plaintiffs are deemed employees under the LWPA.

For the reasons stated, the Court finds that Plaintiffs are properly classified as employees under the Fair Labor Standards Act and under the Louisiana Wage Payment Act.

---

[103] *Hickman,* 262 So.2d 385 (1972).
[104] *Hulbert*, 68 So. 3d at 670.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment[105] is **GRANTED**.

New Orleans, Louisiana, June 9, 2022.

*[signature: Wendy B Vitter]*

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[105] R. Doc. 203.