UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STACEY BADON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12317** |
| **BERRY'S RELIABLE RESOURCES, LLC AND RHONDA WILLIAMS** | **SECTION "D" (3)** |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Set Attorneys' Fees and Costs (Rec. Doc. No. 236) ("Motion") filed by plaintiff, Stacey Badon, on behalf of herself and all those similarly situated (collectively "Plaintiffs"). Defendants have filed an opposition. (Rec. Doc. No. 240). Plaintiffs have filed a reply. (Rec. Doc. No. 245). The District Court referred the motion for hearing, if necessary, and submission of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, **IT IS RECOMMENDED** that the Motion be **GRANTED**, and Plaintiffs be awarded attorneys' fees and costs as outlined below.

## I. BACKGROUND

This case involved a wage dispute. On August 27, 2019, Plaintiff Stacey Badon filed a complaint alleging she had been underpaid under the Fair Labor Standards Act ("FLSA"). (Rec. Doc. No. 1). The complaint alleged a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons since August 2016 who worked for Defendant Berry's Reliable Resources and were not paid overtime. *Id*. It culminated in three consolidated cases against Defendants asserting claims for unpaid wages pursuant to the FLSA and Louisiana's Final Wage Payment Act. (Rec. Doc. No. 235). Plaintiffs Anthony Badon and Francine Dixon additionally asserted claims against Defendants for retaliation based on their efforts to assert their rights under the FLSA. *Id*.

On August 15, 2022, the case went to trial before a jury. (Rec. Doc. No. 224). On August 17, 2022, the jury returned a verdict in favor of Plaintiffs on all claims except for Anthony Badon's retaliation claim. (Rec. Doc. No. 228). Plaintiffs filed the instant motion seeking attorneys' fees and costs in the amount of $241,987.32 representing 670.60 hours of work.

## II. LAW AND ANALYSIS

### a. The Lodestar Approach

Under the FLSA, a prevailing plaintiff is entitled to a reasonable attorneys' fee. The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Fifth Circuit has held that "[r]easonable attorney's fees are mandatory" when a court finds that an employer has violated the FLSA. *Steele v. Leasing Enters., Limited*, 826 F.3d 237, 249 (5th Cir. 2016) (quoting *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 n. 18 (5th Cir. 1979)).

The Fifth Circuit uses the lodestar method to calculate an appropriate attorneys' fee award under the FLSA. *Kuperman v. ICF International*, Civ. A. No. 08-565, 2009 WL 10737138, at *1 (E.D. La. Oct. 13, 2009) (citing *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006)). The United States Supreme Court and the Fifth Circuit have oft repeated that a request for attorneys' fees should not spawn major ancillary litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1938); *Associated Builders & Contractors of La., Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 379 (5th Cir. 1990). A court's discretion in fashioning a reasonable attorney fee is broad and reviewable only for an abuse of discretion, *i.e.,* it will not be reversed unless there is strong

evidence that it is excessive or inadequate, or the amount chosen is clearly erroneous. *Hensley*, 461 U.S. at 436-37.

To determine a reasonable fee, the court must provide a concise but clear explanation of its reasons for the fee award, making subsidiary factual determinations regarding whether the requested hourly rate is reasonable, and whether the tasks reported by counsel were duplicative, unnecessary, or unrelated to the purposes of the lawsuit. *Hensley*, 461 U.S. at 437-39; *Associated Builders & Contractors*, 919 F.2d at 379. The Fifth Circuit has noted that its "concern is not that a complete litany be given, but that the findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation." *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).

In assessing the reasonableness of attorney fees, the court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *See Hensley*, 461 U.S. at 433; *Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002); *Migis v. Pearle Vision, Inc.*, 135 F.2d 1041, 1047 (5th Cir. 1998); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *Kellstrom*, 50 F.3d at 324; *In re Smith*, 996 F.2d 973, 978 (5th Cir. 1992).

After calculating the lodestar, the court may decrease or enhance the lodestar based on the relative weight of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the

amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Johnson*, 488 F.2d at 717-19.

Of the aforesaid *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved, the result obtained, and the experience, reputation, and ability of counsel. *Migis*, 135 F.3d at 104. The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account, which would constitute impermissible double-counting. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999); *Shipes v. Trinity Indus.*, 987 F.2d 311, 319-20 (5th Cir. 1993). Three of the *Johnson* factors – complexity of the issues, results obtained, and preclusion of other employment – are fully reflected and subsumed in the lodestar amount. *Heidtman*, 171 F.3d at 1043; *Shipes*, 987 F.2d at 319-22 & n. 9. Since the *Johnson* decision issued, the Supreme Court has barred any use of the sixth factor (whether the fee is fixed or contingent). *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992)).

The Court may use its "equitable discretion" to arrive at a reasonable fee award by eliminating certain hours related to unsuccessful claims or by reducing the fee award to account for plaintiffs' limited success. *Pruett v. Harris County Bail Bond Bd.*, 499 F.3d 403, 418 (5th Cir. 2007). However, "[w]hile a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 830 (5th Cir. 2003). In a lawsuit under the FLSA, "an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced." *Id*. Regardless, the lodestar calculation is

4

the "most useful starting point" for determining the award of attorneys' fees. *Hensley*, 461 U.S. at 433.

### i. Reasonable Hourly Rates

"[R]easonable hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill." *Blum*, 465 U.S. at 895 n.11. "An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his 'customary billing rate,' the rate is within the range of prevailing market rates, and the rate is not contested." *White v. Imperial Adjustment Corp.,* No. 99-3804, 2005 WL 1578810, at *5 (E.D. La. June 28, 2005) (citing *La. Power & Light Co., v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)). An attorney's requested hourly rate is also prima facie reasonable if the hourly rate is not opposed. *Stratis Constr., Inc. v. City of Hammond*, Civ. A. No. 19-12901, 2021 WL 736466, at *2 (E.D. La. Feb. 25, 2021) (finding rates to be deemed reasonable when not opposed and supported by sufficient evidence); *Shaw v. Ciox Health, LLC*, No. 19-14778, 2021 WL 928032, at *2 (E.D. La Mar. 11, 2021) (holding that when motion is unopposed, defendant's unrefuted evidence as to the rate stands alone but expressly noting that it makes no finding that the hourly rate at issue is a reasonable rate).

Here, Plaintiffs seek an hourly rate of $350, and in support have attached an affidavit of Jody Forester Jackson, a declaration of John O. Pieksen, and have cited to a number of cases in this district in support. In his affidavit, Mr. Jackson attests to his experience with employment law, having practiced in that area for eighteen years, with an emphasis on FLSA litigation. (Rec. Doc.

No. 236-2). Mr. Jackson also attests to the experience of his partner, Mary Bubbett Jackson. Mrs. Jackson has been a civil litigator for the last eighteen years, with ten years focused specifically on employment law. *Id*. at 3. In the attached Declaration of John O. Pieksen, an attorney practicing employment law in Louisiana for thirty years, he indicates that the hourly rates "are in accordance with the current market rates for litigation attorneys in the New Orleans area of comparable experience, skills, and reputation in employment litigation in federal trial courts." (Rec. Doc. No. 236-4, p. 2). Finally, Plaintiffs point to a number of decisions within the Eastern District to support their hourly rate. *See Jones v. New Orleans Regional Physician Hospital Org.*, No. 17-8817, 2019 WL 6770029, at *2 (E.D. La. Dec. 12, 2019) (approving a rate of $355/hour for an attorney with seventeen years of experience); *Altier v. Worley Catastrophe Response, LLC*, Civ. A. No. 11-241, 2012 WL 161824, at *22 (E.D. La. Jan. 18, 2012) (approving a rate of $350 for "partner level attorneys [that] have substantial experience in FLSA collective and class actions).

Defendants argue that Plaintiffs have failed to meet their burden of proving the market rate for similarly situated attorneys, pointing to deficiencies in Mr. Jackson's affidavit, as it does not include his or Mrs. Jackson's educational background, and differences in the postures of the cases cited by Plaintiffs when compared with the instant case. (Rec. Doc. No. 240-1, pp. 4-5). Defendants claim that as this was a "relatively simple case… counsels' suggested rates blow through the high end of the apparent scale in this circuit and should be reduced." *Id*. at 6.

The Court agrees that Plaintiffs' proposed rate should be reduced and awards Plaintiffs a reasonable hourly rate of $300. *See Fleming v. Elliott Security Solutions, LLC*, Civ. A. No. 19-2348, 2021 WL 4908875, at *4 (E.D. La. Oct. 21, 2021) (awarding Mr. and Mrs. Jackson a rate of $300/hour in a FLSA action); *Rodney v. Elliott Security Solutions, LLC*, Civ. A. No. 19-11890, 2020 WL 4756490, at *3-6 (E.D. La. July 30, 2020) (awarding an attorney with seventeen years

6

of experience in a FLSA action a blended rate of $275 for routine work requiring less skill and $325 for all other more complex work); *Hubert v. Curren*, No. 18-7069, 2018 WL 4963595 (E.D. La. Oct. 15, 2018) (reducing rate of partner with seventeen years of experience from $400/hour to $300/hour as prevailing rate in district). Furthermore, this Court previously awarded Plaintiffs' attorney fees in this matter at an hourly rate of $300. (Rec. Doc. No 60); *see also Badon v. Berry's Reliable Resources, LLC*, Civ. A. No. 19-12317, at *3 (E.D. La. Nov. 30, 2020).

### ii. Hours Reasonably Expended

The party seeking the fee bears the burden of documenting and supporting the reasonableness of all time expenditures for which compensation is sought. *Hensley*, 461 U.S. at 437. "Counsel for the prevailing party should make a good faith effort to exclude from fee request hours that are excessive, redundant, and otherwise unnecessary…" *Id.* at 434. Hours that are not properly billed to one's client also are not properly billed to one's adversary. *Id.* The Supreme Court calls on fee applicants to make requests that demonstrate "billing judgment." *Id.* The remedy for failing to exercise "billing judgment" is to exclude hours that were not reasonably expended. *See Hensley*, 461 U.S. at 434; *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002) (quoting *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996) ("If there is no evidence of billing judgment, however, then the proper remedy is not a denial of fees, but a reduction of 'the hours awarded by a percentage intended to substitute for the exercise of billing judgment,'"). Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *overruled on other grounds by Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006); *Cameron v. Greater New Orleans Fed. Credit Union*, Civ. A. No.16-8514, 2017 WL 1426970, at *2 (E.D. La. Apr. 21, 2017).

Plaintiffs contend that they kept "contemporaneous, detailed time records" regarding their work on this litigation. (Rec. Doc. No. 236-1, p. 4). Plaintiffs further argue that this was a contentious, hard-fought matter, in which Plaintiffs engaged in extensive discovery and motion practice. (Rec. Doc. No. 236-1, p. 5). Plaintiffs point to a number of motions to compel (Rec. Doc. Nos. 18, 30, & 69) and motions for contempt (Rec. Doc. Nos. 44 & 46). Plaintiffs claim service of Defendants in the *Dixon* matter was particularly difficult, resulting in substantial costs and ultimately necessitating a status conference with the Court to effect service. (Rec. Doc. Nos. 152 & 155). Plaintiffs state, "Defendants chose not to cooperate when cooperation would have been advisable, refused to stipulate to anything, even when the outcome of motion practice was obvious and ignored multiple orders of this Court." (Rec. Doc. No. 236-1, p. 6). Plaintiffs further claim that the "fact that the fees in this matter are more than they want to pay can be laid solely at Defendants' feet." *Id*.

Plaintiffs describe in detail the breakdown of their billing records, which are separated into the following categories: (1) Initial Legal and Factual Investigation, Drafting Complaint, and Other Case Initiating Matters (37.9 hours); (2) Conditional Certification and Class Notification and Class Claims (29.5 hours); (3) Discovery and Discovery Disputes (164.6 hours); (4) Motion Practice (37.2 hours); Preparing for Trial (306 hours); Mediation and Settlement (19.1 hours); Trial (63 hours); and Post-Trial (13.3 hours) for a total of 670.60 hours. (Rec. Doc. No. 236-1, pp. 6-7).

Finally, Plaintiffs point to their exercise of billing judgment by noting that their firm is small in size and does not employ fulltime administrative staff. (Rec. Doc. No. 236-1, p. 5). Because of this, attorneys in the firm will occasionally handle tasks that are administrative in nature. *Id*. Plaintiffs contend that they do not bill for this time, only billing for work that requires

"legal knowledge, skill and/or discernment." *Id*. Plaintiffs point to their billing sheet in which administrative tasks have been billed at 0.0 time.[1] (Rec. Doc. No. 236-3).

In opposition, Defendant does not provide any argument regarding the reasonable hours expended, except to contend that there is no discussion of the exercise of billing judgment. (Rec. Doc. No. 240-1, pp. 9). However, as noted above, this is incorrect. (*See* Rec. Doc. No. 236-1, p. 5).

"Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799. "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id*. Although Defendants do not point the Court to any particular areas in which Plaintiffs failed to exhibit billing judgment (i.e., blocked billing, vague entries, excessive drafting time, etc.), the Court notes that despite Plaintiffs removing charges for certain administrative tasks, many others charges remain on the billing sheet and should be reduced.

"Normally, clerical and secretarial costs are part of an attorney's office overhead and are reflected in the billing rate." *Rodney*, 2020 WL 4756490, at *10 (quoting *Hagan v. MRS Assocs., Inc.*, 2001 WL 531119, at *9 (E.D. La. May 15, 2001) (reducing hours billed for time attorney

---

[1] A review of the billing sheet indicates that Plaintiffs did not bill for administrative tasks seventeen (17) times, including the following entries: (1) "Calendar scheduling conference and provide black out date to MBJ"; (2) "Calendar and provide updates to tickler system all trial dates and deadlines"; (3) "Confirm 2nd case filed"; (4) "Develop numbering scheme for multiple P and D Cases, distribute to all"; (5) "Review clerk correction to docket"; (6) "Calendar and notify all firm – re Amended scheduling order"; (7) "Review correction to docket on Ds ANSWER"; (8) "Calendar and notes to all new dates – Am[]ended Scheduling Order"; (9) "Review 2 corrections to D docket"; (10) "Calendar amended scheduling order"; (11) "Create new spreadsheet for notification purposes = Mail Merge and label crosschecks"; (12) "Calendar and notes to MBJ new date and cut offs in case"; (13) "Calendar trial date"; (14) "Calendar all deadlines and send for double-check"; (15) "Review Compel zoom hearing info"; (16) "Save Zoom recording of deposition to file"; and (17) "Review court reporter invoices." (Rec. Doc. No. 236-3).

spent faxing documents))). "It is well established that 'when an attorney performs a task that could be handled by clerical staff, the opponent should not be charged the attorney's hourly rate.'" *Id*. (quoting *Kuperman v. ICF Int'l*, Civ. A. No. 08-565, 2009 WL 10737138, at *9 (E.D. La. Oct. 13, 2009) (citation omitted) (reducing hours billed for time attorney spent copying and Bates-numbering documents). "Clerical work includes copying, typing, labeling, faxing, mailing, filing and/or delivering pleadings/documents." *Id*.

On its own review of the billing sheet, the Court has identified a number of entries that are administrative in nature and therefore, Plaintiffs have demonstrated inadequate billing judgment and the reasonable hours must be reduced. Numerous entries include the filing of documents, including filing service into the record, filing notice of opt-in forms, and filing various motions. (Rec. Doc. No. 236-3). Several other entries include the "finaliz[ing] and fil[ing]" of various documents, where clerical work has been subsumed in attorney work. *Id*. Finally, there are a variety of entries that are clearly administrative in nature, such as "Download termination records," "Request expedited deposition transcript," and "Obtain and drop trial supplies at courthouse." *Id*.

These entries represent time spent engaged in clerical tasks, and thus, the Court must reduce the billable hours expended. *See, e.g., Rodney*, 2020 WL 4756490, at *10-11 (reducing billable hours for tasks such as serving a complaint, corresponding with process server, correspondence to opposing counsel serving 30(b)(6) notice, drafting notice of submission, and correspondence with court reporters); *Kuperman*, 2009 WL 10737138, at *9 (reducing billable hours for copying and Bates-numbering documents, "clearly administrative and clerical tasks"). Accordingly, the Court will reduce the reasonable hours expended by ten percent to account for administrative and clerical tasks, bringing the total hours expended to 603.54.

    iii.   **Adjustment of the Lodestar**

After the lodestar is determined, the Court may the adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974). However, "the Supreme Court has limited greatly the use of the second, third, eighth, and ninth factors for enhancement purposes, and accordingly, the Fifth Circuit has held that '[e]nhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts.'" *Wells Fargo Equip. Fin., Inc. v. Beaver Const., LLC*, No. CIV. 6:10-0396, 2011 WL 5525999, at *3 (W.D. La. Oct. 18, 2011) (citing *Walker v. U.S. Department of Housing and Urban Development*, 99 F.3d 761, 771-72 (5th Cir. 1996)). Finally, to the extent that any Johnson factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998).

Plaintiffs argue that a downward adjustment of the lodestar is unnecessary for a number of reasons. First, Plaintiffs argue that the time spent by the attorneys was reasonable, noting that Plaintiffs were "forced to proceed to trial preparation because Defendants refused to extend a settlement offer, even after Plaintiffs prevailed on the issue of misclassification on summary judgment." (Rec. Doc. No. 236-1, p. 13). Although already subsumed in the reasonable hourly rate, Plaintiffs argue they are attorneys skilled in FLSA litigation, and further, that Defendants raised novel defenses requiring additional time to refute. *Id*. at 13-14. Plaintiffs note that they maintain a small law practice, and that the number of hours required to represent Plaintiffs interests may have precluded other employment, and further note that Plaintiffs billed at an hourly rate in one-tenth increments, as is customary in a FLSA case. *Id*. at 14. Plaintiffs argue that they recovered on all of the claims asserted for unpaid wages owed, recovered bad faith penalty damages on their claims under the Final Wage Payment Act, and Plaintiff Francine Dixon recovered on her claims

11

for retaliation. *Id*. at 15. Thus, Plaintiffs argue their attorney fee should not be reduced based on the amount involved and results obtained. *Id*. Finally, Plaintiffs argue that their claimed fees are in line with fees awarded in other cases. *Id*. at 16.

Defendants argue that a reduction is warranted based upon "the fact that an extraordinary amount of time should not have been required in this case, particularly given the fact that counsel for plaintiffs have already litigated these same cases in this district and in multiple locations around country." (Rec. Doc. No. 240-1, p. 7). Defendants further seek a reduction based on the degree of success obtained. *Id*. at 8. Defendants note that Plaintiffs recovered $32,269.60, "a small fraction of the attorney's fees at $241,987.32." *Id*.

The Court has carefully evaluated the Johnson factors and finds an adjustment of the lodestar is not warranted. "There exists a strong presumption of the reasonableness of the lodestar amount." *Saizan*, 448 F.3d at 800. The Court does not find merit in Defendants' argument that the fee should be reduced based on Plaintiffs' experience engaging in FLSA litigation across the country. Further, the Court does not find that a decrease is necessary based on the results obtained. First and foremost, Plaintiffs prevailed on twenty of twenty-one claims asserted. (Rec. Doc. No. 228). Further, "[w]hile a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award." *Singer*, 324 F.3d at 830. In a lawsuit under the FLSA, "an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced." *Id*. Accordingly, the Court does not find an adjustment of the lodestar is necessary.

    **iv. Costs**

Plaintiffs seek $7,102.32 in costs for the three consolidated cases, consisting of $1,206 in filing fees, $1,369.45 in service costs, including subpoena service costs, $346.73 in witness fees and mileage costs, $330.00 in postage fees, $148.35 in copying costs for documents necessary for the case, $3,661.19 in deposition recording and videographer costs necessary for trial, and $40.60 in PACER charges. (Rec. Doc. No. 236-1, p. 18). Defendant does not contest the amount of costs requested.

The applicable law is that costs other than attorneys' fees shall be allowed as a matter of course to the prevailing party unless the court otherwise directs. Fed. R. Civ. P. 54(d). Courts have held that costs awarded under the FLSA include all reasonable out-of-pocket expenses, and that such expenses are recoverable if they are costs normally charged to the fee-paying client. *Kuperman*, 2009 WL 10737138, at *11 (citing *Smith v. Diffee Ford-Lincoln Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002) ("Under the FLSA, costs include reasonable out-of-pocket expenses."); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (holding that courts are not limited to the costs available under Rule 54(d) when a statute expressly authorizes attorneys' fees).

While the Fifth Circuit has not specifically ruled on whether the FLSA allows attorneys to recover reasonable out-of-pocket expenses, it has followed other circuits in allowing out-of-pocket costs for claims under fee-shifting statues such as Title VII and the ADEA. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395-96 (5th Cir. 2003) (allowing out-of-pocket travel expenses in claim under the ADEA); *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (noting that in Title VII cases, the Court allows "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services."). These recoverable costs include postage, photocopying, paralegal

services, long distance telephone charges, and travel costs. *Mota*, 261 F.3d at 529. Before the Court can tax costs, it must find that the costs were necessarily incurred in the litigation, and this finding must be based on some proof of the necessity. *Homes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).

Plaintiffs include as an exhibit thirty-four (34) pages of cost invoices, which support the necessity of the incurrence of these charges in litigation. Furthermore, the costs that stand out as particularly excessive are the costs for service at $1,369.45. However, the record reflects that Defendants themselves were responsible for delays and issues in effecting service. (*See* Rec. Doc. Nos. 152 & 155). Accordingly, this Court finds that the $7,102.32 in out-of-pocket expenses were reasonable and necessarily incurred.

### v. Total

For the foregoing reasons, the Court finds that the lodestar is:

|  | **Hours** | **Rate** | **Total** |
|---|---|---|---|
| **Mary Bubbett Jackson & Jody Forester Jackson** | 603.54 | $300/hour | $181,062 |
| **Lodestar** |  |  | $181,062.00 |

### III. CONCLUSION

Accordingly, and for the foregoing reasons.

**IT IS RECOMMENDED** that the **Motion to Set Attorneys' Fees and Costs (Rec. Doc. No. 236)** be **GRANTED**, and Plaintiffs be awarded reasonable attorneys' fees in the amount of $181,062.00, and costs in the amount of $7,102.32 for a total of $188,164.32.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b), and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 17th day of November, 2022.

*/s/ Dana M. Douglas*
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**